IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>EVERNOTE CORPORATION,<br><br>    Defendant. | C.A. No. 6:20-cv-____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird Technologies") hereby alleges for its Complaint for Patent Infringement against Evernote Corporation, ("Evernote" or "Defendant") on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

### THE PARTIES

1.     Plaintiff Blackbird Technologies is a Delaware limited liability company with its principal place of business located at 200 Baker Avenue, Suite 303, Concord, Massachusetts 01742.

2.     Defendant Evernote is a Delaware corporation with its principal place of business in Redwood City, California. Evernote may be served via its Delaware registered agent, 251 Little Falls Drive, Wilmington, Delaware 19808.

### Illinois Institute of Technology

3.     The patent asserted in this case resulted from research performed at the Illinois Institute of Technology ("IIT") in Chicago, Illinois. IIT was created in 1940 by the merger of the

Armour Institute and the Lewis Institute and is the only tech university in Chicago. IIT was founded in order to lift up people of all backgrounds with education that would help them meet the needs of the age, and it has received numerous awards and recognition for its work in achieving this goal. (https://www.iit.edu/about/rankings-and-recognition/numbers.) IIT is "known for advanced research that is moving the needle toward significant innovation" and is "home of the country's first research nuclear reactor and the nation's first functional microgrid." (https://www.iit.edu/research.) IIT owns numerous patented inventions, many of which are made available for licensing. (https://research.iit.edu /lptc/licensing-opportunities.)

### Blackbird Technologies

4. Blackbird Technologies is a company founded to assist individual inventors, small businesses, and universities realize value for their innovations.

### Evernote

5. Upon information and belief, Evernote is a privately held computer software company that has over 300 employees and over 200 million users of its software products.

### JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

7. Subject-matter jurisdiction over Blackbird Technologies' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

8. This Court has personal jurisdiction over Evernote because Evernote is subject to general and specific jurisdiction in the state of Texas. Evernote is subject to personal jurisdiction because Evernote has transacted business within Texas and committed acts of patent infringement

in Texas. Evernote has made certain minimum contacts with Texas such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. Evernote regularly conducts business in Texas, including by marketing, selling, and/or offering for sale accused software products through its website, www.evernote.com, which is accessible throughout the United States, including Texas. Evernote inserts the accused products into the stream of commerce, with the knowledge and intention that they be offered and sold to, and used by, Texas residents. Evernote also maintains an office at 3300 N. Interstate 35, Suite 400, Austin, Texas 78705. The exercise of personal jurisdiction comports with Evernote's right to due process because, as described below, Evernote has purposefully availed itself of the privilege of conducting activities within Texas such that it should reasonably anticipate being haled into court here. As alleged herein, acts by Evernote in this District have caused injury to Blackbird Technologies.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Evernote has committed acts of infringement and has a regular and established place of business in this District.

10. Evernote maintains a regular and established place of business at 3300 N. Interstate 35, Suite 400, Austin, Texas 78705. (https://evernote.com/contact). Upon information and belief, Evernote note has approximately 60 employees in its Austin office. (https://www.builtinaustin.com/company/evernote).

## U.S. PATENT NO. 9,183,220

11. U.S. Patent No. 9,183,220 (the "'220 patent" or "patent-in-suit") entitled, "Hierarchical structured data organization system," was duly and legally issued by the U.S. Patent and Trademark Office on November 11, 2015. Blackbird Technologies is the owner by assignment of all right, title, and interest in and to the '220 patent, including all right to recover for any and all

infringement thereof. The '220 patent is valid and enforceable. A true and correct copy of the '220 patent is attached as Exhibit A.

12. The claims of the '220 patent are directed to an unconventional data structural system that utilizes user-defined metalabels to structure electronic files, data items, web pages, or web site members "into a multi-hierarchy user defined system." (Ex. A, '220 patent, at 2:17-18.) Prior to the claimed invention, "[t]raditional file systems, including both UNIX and WINDOWS, have one hierarchical method of file organization . . . which is tree structured with directories and subdirectories." (*Id*. at 1:27-31.) This conventional or "traditional" method of structuring data "leads to considerable inefficiencies" in searching for files (*e.g.*, keyword searching) and "does not allow the users to easily describe or annotate a file." (*Id*. at 1:38-46.) The '220 patent identifies "a need for an improved method for organizing and searching files or other data on a computer or web site, as well as organizing the search results." (*Id*. at 1:57-59.)

13. The claimed invention improves the functioning, structure, and searching of traditional file systems by claiming an unconventional technological solution. In particular, the claimed invention achieves improved file structuring and searching by assigning user-defined metalabels to electronic files or websites that exist in a traditional or first hierarchical file structure, and then creating additional hierarchical file structures as a function of the user-defined metalabels. (*Id*. at 2:4-13.) By linking the metalabels to the existing electronic files and creating additional hierarchical file structures, the files of the traditional or first hierarchical file structure do not need to be changed or replicated. The files still physically exist in the first hierarchical file structure, but a second hierarchical structure using the metalabels can be created through associating the metalabels with the existing files. These additional file structures are created according to the user-defined metalabels, and when a "user searches based upon an assigned metalabel, the program

code implementing this invention provides the corresponding electronic files in a new file directory." (*Id*. at 2:51-57.) Accordingly, the claimed invention allows for "improved file searching through implementation of additional file structures that exist in the background of a data processing system alongside the traditional hierarchical directory tree file structure." (*Id*. at 12:43-47.) In that sense, "the additional hierarchical file structures of this invention are abstract data file structures, as they exist in the background and are not conventionally viewed through a user interface like the traditional file directories." (*Id*. at 2:18-24.) The term "abstract" in this sense refers to the computer implementation of the additional metalabel hierarchical data structures that are created and exist in the background as opposed to a traditional file folder structure that can be viewed through a graphical user interface. In that sense, the claimed invention also reduces redundancies in the system since copies of electronic files are not required even though additional structural hierarchies are created.

14. For example, as described in the '220 patent, consider a user with a traditional tree file structure storing photos across various folders and subfolders as shown:

```
Pictures/2006/Dad
Pictures/2005/Dad
Pictures/2006/Mom
Pictures/2005/Mom
Picture/2006/Baby
Pictures/2005/Baby
```

(*Id*. at 2:31-36.) As explained, "[i]f a user wanted to access all files which involve dad, even files not having 'Dad' in the filename but including dad in the picture, the number of files may be substantial and spread among multiple subdirectories." (*Id*. at 2:37-40.) The claimed invention solves this problem by assigning user-defined metalabels to files to create additional structural hierarchies so that searching is more accurate and efficient. As shown in the '220 patent, by

assigning files related to "Dad" with a "Dad" metalabel, a new additional metalabel hierarchical structure would be created as shown below:

```
Pictures/Dad/2005
Pictures/Dad/2006
Pictures/Dad/Baby
Pictures/Dad/Mom
```

(*Id*. at 44-47.) Now, if a user wants to search for all pictures related to "Dad," the additional "Dad" metalabel hierarchical file structure can be readily searched, rather than searching through the larger set of data that does not indicate what picture is related to "Dad." Thus, both the accuracy and speed of the search is improved with these new structures.

15. By assigning user-defined metalabels to electronic files in a traditional or first hierarchical structure, the functioning of the computer itself—*i.e.*, the structure of the existing hierarchical file structure—is transformed. This change in file structure allows for vastly improved search functionality as electronic files can be quickly searched and retrieved by searching the metalabel hierarchical file structures. This way, the data does not need to be replicated within each of the relevant first hierarchical file structures and the search and retrieval of files is more efficient and effective (faster and more accurate) than conventional keyword searching.

16. The U.S. Patent and Trademark Office has recognized that the claimed invention improves the functioning of a computer itself and is not directed to an abstract idea. During prosecution of the application that led to the issuance of the '220 patent, in the Notice of Allowance, the Examiner stated:

> The claimed invention in all independent claims 1, 12, 15, 17, 23 and 27 do in fact already have a "significantly more"-type recitation, in that the metalabel file structures are a new type of file structure that improve the functioning of the computer itself, and transforms the computer to a different state with hierarchical file structures in addition to the traditional folder system (see Remarks dated 06/22/2015); as a whole all independent claims do amount to significantly more than the judicial exception (the recited exception itself, meaningful limitations on the exception, or improvements to another technology, technical field or the functioning). It qualifies eligible subject matters under 35 USC § 101: Claims 1, 12, 15, 17, 23 and 27 are patent eligible under Alice.

(Exhibit B, U.S. App. No. 14/489,151, June 26, 2015 Notice of Allowance.)

17.     The claims of the '220 patent achieve a technological solution to a technical problem that existed with conventional data structures and related file searching. As explained in the '220 patent, "[i]n such traditional hierarchical file structures, often referred to as tree structures . . . current searching of the electronic files in the traditional hierarchical file structure, as represented in FIG. 1, is typically based upon the filename or other information about the file itself, such as the file type or extension." (*Id*. at 5:34-45.) By creating additional metalabel hierarchical file structures in the manner claimed in the '220 patent, search times are demonstrably improved. (*See, e.g., id*. at 11:45-12:47.) Thus, as described in the '220 patent, the use of metalabels to create additional hierarchical data structures involves more than the performance of well-understood, routine, or conventional activities.

COUNT I – INFRINGEMENT OF THE '220 PATENT

18. Blackbird Technologies reasserts and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

19. Upon information and belief, Evernote hosts, develops, programs, operates, and supports a note taking, note organization, and note management software application ("Evernote Software"). (https://evernote.com/).

20. Upon information and belief, the Evernote Software utilizes "tags" as an additional means to sort, organize, and search for electronic notes. As Evernote describes:

> Tags let you add keywords to notes, making them easier to find and browse when you've got a lot of them. Use tags when a note might apply to more than one category or when you want to filter results in a certain notebook by a keyword. You could use tags to associate notes with categories, memories or locations.

(Exhibit C, Evernote, "Organize With Tags," https://help.evernote.com/hc/en-us/articles/208314388-Organize-with-tags.)

21. Evernote infringes one or more claims of the '220 patent, including at least independent claim 13, through the tagging functionality in the Evernote Software, as discussed in the following paragraphs of this Complaint.

22. The Evernote Software provides "a computer-implemented method of organizing a plurality of electronic files, data items, web pages, or web site members organized in a first file structure on a recordable medium," as recited in claim 13.

23. For example, the Evernote Software provides notes in a first file structure on an Evernote hosted server. As shown below, notes are organized in a hierarchy by stacks (*e.g.*, "Test Main Folder 1"), notebooks (*e.g.*, "Test Notebook 1"), and notes (*e.g.*, "Test Note 1"):



24. The Evernote Software "assign[s] with a data processor a plurality of metalabels defined by a user to each of at least two of a plurality of electronic files, data items, web pages, or web site members to organize the electronic files, data items, web pages, or web site members as a function of the metalabels into a plurality of additional hierarchical file structures existing simultaneously with the first file structure, wherein more than one of the at least two plurality of electronic files, data items, web pages, or web site members is assigned a same user-defined metalabel to organize the more than one of the plurality of electronic files, data items, or web pages in a same one of the additional hierarchical file structures;" as recited in claim 13.

25. For example, as illustrated below, the Evernote Software allows users to define a plurality of "tags" (*i.e.*, metalabels) to apply to notes and notebooks:

**COMPLAINT FOR PATENT INFRINGEMENT**                                                **PAGE 9**



A user can define any tag for notes. As further illustrated below and by way of example, "Metalabel 1" and "Metalabel 2" tags have been defined. Nested tags "Sub-Metalabel 1" and "Sub-Metalabel 2" tags have also been defined:



**COMPLAINT FOR PATENT INFRINGEMENT**                                      **PAGE 10**

26. As illustrated below, more than one of the at least two plurality of electronic files or data items (here, notes) are each assigned the same user-defined metalabels to organize notes as a function of the metalabels into a plurality of additional hierarchical file structures existing simultaneously with the first file structure, wherein more than one of the at least two plurality of notes is assigned a same user-defined metalabel to organize the more than one of the plurality of notes in a same one of the additional hierarchical file structures. As shown, a plurality of user-defined metalabels can be assigned to any note. For example, Test Note 1 is assigned metalabels Metalabel 1 and Sub-Metalabel 1, and Test Note 2 is assigned metalabels Metalabel 2 and Sub-Metalabel 2:



The plurality of user-defined metalabels can be assigned to each of at least two notes. In the example below, Test Note 1, Test Note 6, and Test Note 7 have been assigned to Sub-Metalabel 1, and Test Note 2, Test Note 5, and Test Note 8 have been assigned to Sub-Metalabel 2:

**COMPLAINT FOR PATENT INFRINGEMENT**                                                    **PAGE 11**



27. As illustrated below, by tagging notes with the user-defined metalabels, a plurality of additional hierarchical file structures exist simultaneously with the first file structure:



As further illustrated below, when a search is run by tag, notes have been organized by the tags and can therefore be quickly retrieved and displayed according to these additional metalabel hierarchies:



28. The Evernote Software "stor[es] the plurality of additional hierarchical file structures on the recordable medium or a second recordable medium associated with the data processor," as recited in claim 13. For example, notes are stored on Evernote's servers. (*See* Exhibit D - Evernote, "How to back up and restore your data in Evernote for Windows," https://help.evernote.com/hc/en-us/articles/208313528-How-to-back-up-and-restore-your-data-in-Evernote-for-Windows ("All of the data kept in Evernote . . . is synced with Evernote's servers on the web. This means that there are always at least two copies of your information: your Windows PC and Evernote.").)

29. The Evernote Software's "processor[s] automatically link each of the plurality of user-defined metalabels stored in the database to a corresponding electronic file, data item, web

pages, or web site members of the each of the plurality of user-defined metalabels," as recited in claim 13.

30. For example, as illustrated below, when assigning a metalabel to a note (*e.g.*, Sub-Metalabel 1 or Sub-Metalabel 2), the saved metalabel is automatically associated (*i.e.*, linked) to that note:



31. The Evernote Software "automatically updat[es] the additional hierarchical file structures with the processor when any of the plurality of electronic files, data items, web pages, or web site members is moved, modified, copied, or deleted," as recited in claim 13.

32. For example, as illustrated below, the note Test Note 1 has been assigned metalabels Metalabel 1 and Sub-Metalabel 1:

**COMPLAINT FOR PATENT INFRINGEMENT**        **PAGE 14**



As further illustrated below, when Test Note 1 is deleted, that note is no longer displayed in either the Metalabel 1 or Sub-Metalabel 1 tag views. Thus, the additional hierarchical file structure, in this example the Metalabel 1/Sub-Metalabel 1 hierarchical structures, have been automatically updated:

Showing Test Note 1 as displayed in Metalabel 1 and Sub-Metalabel 1 tag view:



**COMPLAINT FOR PATENT INFRINGEMENT**                                                         **PAGE 15**

Showing deletion of Test Note 1 in main view:



Showing updated Metalabel 1 and Sub-Metalabel 1 tag view with Test Note 1 deleted:



***Direct Infringement of Claim 13 of the '220 Patent***

33. Evernote, pursuant to 35 U.S.C. § 271(a), has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '220 patent, including at least claim 13, by making, using, offering to sell, and selling, in this judicial

district and/or elsewhere in the United States, the Evernote Software. For example, Evernote controls the Evernote Software as a whole by hosting, running, operating, and/or supporting its software. Evernote makes the Evernote Software by hosting its software or otherwise making its software available to customers.

*Inducement of Claim 13 of the '220 Patent*

34. At least on or after the filing of this Complaint, Evernote, pursuant to 35 U.S.C. § 271(b), knowingly and intentionally actively induces the infringement of one or more claims of the '220 patent, including at least claim 13, by instructing and otherwise encouraging infringement and by making the Evernote Software available to users. Evernote provides instructional and other promotional materials demonstrating how the Evernote Software functions, including materials related to tagging files. (*See*, *e.g.*, Ex. C.)

35. A user of the Evernote Software, pursuant to 35 U.S.C. § 271(a), directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '220 patent, including at least claim 13, by using the Evernote Software in a manner as claimed. For example, a user can utilize the tagging feature by using the Evernote Software to tag and organize electronic files.

DAMAGES

36. Blackbird Technologies has sustained damages as a direct and proximate result of Evernote's infringement of the '220 patent.

37. As a consequence of Evernote's past infringement of the '220 patent, Blackbird Technologies is entitled to the recovery of past damages in the form of, at a minimum, a reasonable royalty.

38. As a consequence of Evernote's continued and future infringement of the '220 patent, Blackbird Technologies is entitled to royalties for its infringement of the '220 patent on a going-forward basis.

PRAYER FOR RELIEF

WHEREFORE, Blackbird Technologies respectfully requests that this Court enter judgment against Defendant, as follows:

A. Adjudging that Defendant has directly and/or indirectly infringed at least claim 13 of the '220 patent literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a)-(c);

B. An award of damages to be paid by Defendant adequate to compensate Blackbird Technologies for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, and in no event less than a reasonable royalty, including interest, costs, and disbursements pursuant to 35 U.S.C. § 284 and, if necessary to adequately compensate Blackbird Technologies for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C. Awarding Blackbird Technologies all damages, including treble damages, based on any infringement found to be willful or otherwise egregious, pursuant to 35 U.S.C. § 284;

D. Ordering Defendant to continue to pay royalties to Blackbird Technologies for infringement of the '220 patent on a going-forward basis;

E. Adjudging that this case be exceptional under 35 U.S.C. § 285 and awarding enhanced damages, including costs and attorneys' fees, to Blackbird Technologies;

F. Awarding Blackbird Technologies pre-judgment and post-judgment interest at the maximum rate permitted by law on its damages; and

G. Granting Blackbird Technologies such further relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Blackbird Technologies demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated:  July 1, 2020 | BUETHER JOE & CARPENTER, LLC |
| | |
| | /s/ Christopher M. Joe |
| OF COUNSEL | Christopher M. Joe |
| | Chris.Joe@BJCIPLaw.com |
| Wendy Verlander | BUETHER JOE & CARPENTER, LLC |
| wverlander@blackbird-tech.com | 1700 Pacific - Suite 4750 |
| Jeffrey Ahdoot | Dallas, TX 75201 |
| jahdoot@blackbird-tech.com | (214) 466-1272 |
| Blackbird Tech LLC d/b/a | |
| Blackbird Technologies | *Attorneys for Plaintiff* |
| 200 Baker Avenue, Suite 303 | *Blackbird Tech LLC* |
| Concord, MA 01742 | *d/b/a Blackbird Technologies* |
| (617) 307-7100 | |