**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | |
| *Plaintiff*, | C.A. No.: 6:20-cv-00603-ADA |
| v. | JURY TRIAL DEMANDED |
| EVERNOTE CORPORATION | |
| *Defendant*. | |

## JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

Plaintiff Blackbird Tech LLC ("Blackbird") and Defendant Evernote Corporation ("Evernote") jointly move the Court to resolve certain disputes and enter the disputed Protective Order attached as Exhibit A. Areas of dispute in the protective order are highlighted therein and the Parties' positions are provided below.

I.   **Access To Source Code - ¶10(d)**

    A.   **Blackbird's Position**

Defendant cannot show Blackbird's primary litigation counsel should be unconditionally restricted from access to its source code. In determining whether a party's attorney should be prevented from access to information, the focus is on the risk of "inadvertent or accidental disclosure." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). But, "[t]he risk of inadvertent disclosure should be weighed against the potential risk that the Protective Order may impair a party's ability to prosecute or defend against the case." *Masakazu Ushijima v. Samsung Elecs. Co., Ltd. et al.*, No. A-12-CV-318 LY, 2014 WL 12160777, at *3 (W.D. Tex. Oct. 30, 2014) (citing *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214, at *2 (E.D. Tex. Mar. 14, 2008)). Other factors that may be considered are: (1) whether the person receiving the confidential information is involved in competitive decision making relating to the subject matter of the patent; (2) the hardship the restriction would impose; (3) the remedy's timing; and (4) the remedy's scope. *Id*.

Blackbird's access to source code is critical to its ability to prosecute this case. Blackbird's business model allows individual inventors and small companies access to the value of their inventions, often through efficiently run litigation. The primary way Blackbird achieves this efficiency is through a unique structure in which Blackbird's in-house litigation counsel, rather than expensive outside counsel, serve as primary litigation counsel for all phases of litigation, including trial. Accordingly, if Blackbird's counsel of record is prevented from viewing Defendant's source code it would be very difficult, if not impossible, for Blackbird to litigate this case. Under these circumstances, the balance of harms weighs heavily in favor of allowing Blackbird's counsel access to source code.

Defendant cannot articulate any real reason why source code is any different than other

highly confidential information in these circumstances. Blackbird does not develop products, let alone a competing product. Nor is it in the business of developing software, computer applications, or anything else related to Defendant's software. Blackbird's business is not focused on any particular technological area, and it does not actively seek to acquire patents in any one technological field. Thus, with the protections of a reasonable protective order in place, which include a reasonably tailored covenant not to sue and prosecution bar, there is no reason to prevent Blackbird's litigation counsel access to any confidential information, including source code.

Defendant claims that litigation counsel at Blackbird are "competitive decisionmakers." Even if true, whether an individual is a competitive decisionmaker does not automatically bar that person from confidential information. Rather, the risk of inadvertent disclosure, if any, should "be weighed against the potential risk that the Protective Order may impair a party's ability to prosecute or defend against the case." *Masakazu*, 2014 WL 12160777 at *3. An absolute restriction on source code will frustrate, if not render impossible, Blackbird's ability to prosecute this case.

The issue of whether Blackbird should be prevented from access to highly confidential information has already been addressed by a district court in Delaware. In *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592 (D. Del. May 18, 2016), the court rejected defendants' attempt to exclude Blackbird's in-house counsel from access to highly confidential materials. The court found that "Blackbird would suffer harm if prevented from using the attorneys of its choice," that "denying its in-house litigators the ability to meaningfully participate in these cases would leave it with no alternative but to shut down the litigation," and "requiring Blackbird to retain outside counsel would constitute some level of harm to Blackbird...." *Id.* at *5. In rejecting an outright exclusion, the court further found "it is significant that the only competitive harm Blackbird realistically poses to any of the Defendants

arises out of litigation" and "[a]ccordingly, if the threat of future litigation is taken off the table, there is significantly less likelihood of harm to Defendants." *Id*. In attempting to strike a balance, the court concluded that a limited covenant not to sue (in addition to the already agreed-to prosecution bar) was appropriate. *Id*. at *6.

In light of this prior ruling, and acknowledging that this Court's standard Protective Order does not contemplate the unique situation here, Blackbird has offered a covenant not to sue in line with the terms proposed by the Delaware court. (*See* Ex. A, at ¶14). Despite this reasonable solution, which unquestionably minimizes risk of inadvertent disclosure, Defendant still refuses Blackbird any access to its source code.[1] Prohibiting Blackbird's counsel access to source code will prevent them from being able to act as primary litigation counsel. And, because of Blackbird's unique structure, that would make continued litigation of this case extremely difficult, if not impossible. Given the significant risk of harm to Blackbird and minimal risk to Defendant in light of the proposed protective order, Defendant cannot meet its burden to show Blackbird should be unconditionally excluded from access to source code.

### B. Evernote's Position

Since 2004, Evernote has created products that align with three things the human brain does: remember the past, build connections, and create new ideas for the future. Plaintiff acquires rights to and asserts patents.

---

[1] Previous cases concerning whether in-house decisionmakers should be given access to confidential materials do not involve in-house counsel acting as counsel of record and primary litigation counsel. In those cases, the courts found the risk of harm to plaintiff low since plaintiff had competent outside counsel serving as primary trial counsel. *See, e.g.*, *ST Sales Tech Holdings*, 2008 WL 5634214, at *8; *Voice Domain Techs., LLC v. Apple, Inc.*, No. CV 13-40138-TSH, 2014 WL 5106413, at *5 (D. Mass. Oct. 8, 2014). Because all of Blackbird's primary litigation counsel (who are not serving solely as local counsel) are also in-house counsel, the harm in preventing access to source code greatly outweighs any risk to Defendant. The Delaware court also distinguished these cases for the same reasons.

This Court ordered Evernote to produce documents, including source code ("RCSC"). Evernote will suffer serious harm if forced to produce RCSC to Plaintiff's three (3) owners and managers, who are also counsel-of-record, because these individuals are competitive decisionmakers ("Blackbird owners/counsel").  Competitive decisionmakers should be denied access to ultra-sensitive information if there is "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Evernote's RCSC operates its core business: creating notes, tags, and notebooks. Subject to the Court's default protective order, and a source code computer provision, Evernote has no objection to producing RCSC to Plaintiff's outside counsel and experts. Evernote agrees to produce Confidential, Highly Confidential ("RAEO"), and redacted RCSC to Blackbird's owners/counsel. They demand more: ***access to all of Evernote's RCSC and the right to keep it forever***.

Blackbird's owners, in-house counsel, and counsel-of-record function as "the officers and principals of Blackbird, a business whose main practice is acquiring patents and asserting them in litigation" and should be treated as "competitive decisionmakers."  *Blackbird Tech LLC v. Service Lighting and Elec. Supplies Inc.*, No. 15-cv-53, 2016 WL 2904592, at *4 (D. Del. May 18, 2016). They are competitive decisionmakers because their business is monetizing patents. *Id.*; *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) ("[Internal counsel's] involvement in licensing through litigation constitutes competitive decisionmaking"); *ST Sales Tech. Holdings, LLC v. Daimler Chrysler Co.*, 2008 WL 5634214 at *5 (E.D. Tex. Mar. 14, 2008) (involvement in patent acquisition allows them to "seek out certain patents and then propose claim constructions that read on Defendants' known use of the allegedly infringing systems").

Forcing Evernote to expose its RCSC to Blackbird's competitive decisionmakers will result in an unacceptable opportunity for inadvertent disclosure. *Intel*, 198 F.R.D. at 530

(collaboration with competitive decisionmakers "exacerbated" the risk of inadvertent disclosure). The risk is acute. Blackbird's proposal allows these competitive decisionmakers to ***view all*** of Evernote's RCSC on source code computers, and ***keep printed copies and their RCSC notes forever***. *See* Section V. Once Evernote's RCSC is exposed, Blackbird's owners/counsel will "have a difficult time compartmentalizing [their] knowledge," particularly because it remains in their possession, even when they acquire and assert patents in the future. *United States v. Dentsply Int'l Inc.*, 187 F.R.D. 152, 159-60 (D. Del. 1999) (considerable risk of disclosure of confidential info). Giving Blackbird's owners/counsel unlimited access, coupled with unlimited ability to maintain Evernote's RCSC, is the hallmark of an unacceptable opportunity for inadvertent disclosure. Once exposed, the bell cannot be unrung. *In re Deutsche*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Denial of access is proper. *ST Sales*, 2008 U.S. Dist. LEXIS 107096, at *8-*9 ("'competitive decisionmaking' is the oft-cited most critical factor weighing in favor of denial of access").

Blackbird's owners/counsel do not need unlimited access to RCSC to litigate this case. They will have access to Evernote Confidential, RAEO, and redacted RCSC information used for summary judgment and trial. Moreover, Blackbird's outside counsel and experts can access Evernote's RCSC and advise Blackbird—the client—about the merits. This is not unusual. Clients typically retain outside counsel and experts and rarely have access to their competitor's sensitive information. Blackbird's desire for its owners to litigate is unusual, but its insistence that its owners obtain full access to RCSC is untenable. Blackbird is asking this Court to make a new rule that permits any company with in-house counsel that appears in the case to sue its competitor so they can gain ***unlimited access*** coupled with ***unlimited ability to maintain*** its competitor's most sensitive information. This new rule would force the producing party to disclose its most sensitive information just because the opposing party didn't want to pay for outside counsel. This is contrary

to *U.S. Steel* and other courts. *Intel*, 198 F.R.D. at 530 (denying access because "involvement in licensing through litigation constitutes competitive decisionmaking"); *Affymetrix, Inc. v. Illumina, Inc.*, No. 05-901, 2005 U.S. Dist. LEXIS 15482, at *8 (D. Del. July 28, 2005) (licensing patents is competitive decisionmaking and results in a bar); *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403, 2017 WL 4138961 (D. Del. Sept. 18, 2017) (in-house counsel with role in patent litigation and licensing barred from access).

Evernote's proposal protects its RCSC from being exposed to small number of competitive decisionmakers (three people), allows Blackbird to litigate this matter by permitting individuals access to its RCSC (outside counsel and experts), and includes reasonable and typical safeguards through the acquisition bar, prosecution bar, and covenant to not sue.[2]

## II.     Whether an Acquisition Bar Is Necessary and Appropriate - ¶7 and Undertaking

### A.   **Blackbird's Position**

Defendant proposes what it calls an "acquisition bar," preventing any individual that reviews source code from 1a) advising or participating in the acquisition or licensing of any patent or 1b) advising on or evaluating any currently owned patent, that will be asserted against Defendant in a future litigation, and 2) advising on the selection or valuation of any patent or claim that will be asserted against Defendant in a future litigation. (Ex. A, at ¶ 7 (bar and related proposed language), Undertaking). But, if Blackbird is permitted access to source code, an acquisition bar would be unnecessary as Blackbird's covenant not to sue provides more appropriate and narrowly tailored protections from any harm Defendant may actually suffer. Certainly, there is no need for both an acquisition bar *and* covenant not to sue, as both are designed to mitigate the risk of

---

[2] Blackbird's demand for access to all RCSC and insistence that it can keep it forever is an unacceptable risk to Evernote.  Blackbird's proposed covenant to not sue is not unlimited and does not last forever. If the covenant to not sue lasted forever, at least the protections offered to Evernote would match the breadth of Blackbird's RCSC demands.

additional litigation.[3]

### B.  <u>Evernote's Position</u>

Evernote's proposed acquisition bar is narrowly tailored. It prevents third parties (*i.e.*, outside counsel and experts) with access to the other side's RCSC from using that sensitive information against the producing party in the future. This is typical because "[a] patent acquisition bar may be appropriate to prevent trial counsel from inadvertently disclosing confidential information when advising on subsequent patent acquisitions." *In re Trustees of Boston University Patent Cases*, No. 12-11935, 2013 WL 12324364, at *3 (D. Mass. Nov. 15, 2013).

The need is acute. Blackbird has a right to obtain and assert patents. Blackbird's outside counsel and experts have a right to view Evernote's RCSC. However, Blackbird's outside counsel (who are permitted to maintain RCSC forever) and its experts should not be permitted to use Evernote's RCSC to advise Blackbird on the acquisition and assertion of patents against Evernote in the future. *See, e.g.*, *Multimedia Content Mgmt. LLC v. Dish Network LLC*, No. 18-cv-00207-ADA, Dkt. No. 93 (W.D. Tex. Sept. 25, 2019) (Albright, J.) (granting acquisition bar).

Blackbird's proposal exposes Evernote to improper risk. Blackbird should not be able to retain outside counsel and experts to analyze Evernote's RCSC and then advise Blackbird on which patents to acquire and assert in the future. If Blackbird directly accessed this sensitive information, it would expose Evernote to significant risk, as noted above. Permitting Blackbird to engage outside counsel and experts to do the same thing would be equally detrimental to Evernote.

## III.   The Appropriate Scope of a Covenant Not to Sue - ¶14

### A.  <u>Blackbird's Position</u>

---

[3] Blackbird's experts would also be subject to the proposed acquisition bar. Such restrictions would give Defendant the advantage of using an expert of its choosing, while Blackbird would have to retain an expert willing to be bound by this unreasonably broad acquisition bar.

In addition to being redundant to its proposed "acquisition bar," Defendant's covenant not to sue is overly broad and extends to patents well outside the technology of the accused products or patent-in-suit. While Blackbird's covenant is limited to acquired patents involving the subject matter of the patents-in-suit (Ex. A, at ¶14), Defendant's covenant further encompasses any patent related to organizing software, task management software, and archiving software (*Id.*). Such expanded restrictions are unwarranted and not relevant to this case. Defendant develops and sells digital note taking and note organizing software. However, its proposed covenant would encompass ***any*** organizing, task management, or archiving software, which would include countless applications and software that have nothing to do with the technology at issue. Accordingly, Blackbird's covenant is appropriate. *Cf. Cheah IP LLC v. Plaxo, Inc.,* No. C–08–4872, 2009 WL 1190331, at *2–3 (N.D. Cal. May 4, 2009) ("a bar against prosecution relating to the subject matter of the patents-in-suit is the language routinely employed by the courts when imposing a patent prosecution bar).

### B.  Evernote's Position

The parties dispute (1) which patents are covered by the covenant, (2) when the covenant ends, and (3) differences in the scope of the customer, supplier, and notice provisions.

For the first dispute, Blackbird argues the covenant should only cover "patents involving the subject matter of the patents-in-suit." This is too narrow because it allows Blackbird to obtain sensitive information about future products, acquire patents, and assert them against Evernote. Evernote's proposal also includes the subject of the information provided to Blackbird (*i.e.*, the functionality of Evernote's products). This scope is appropriate so the covenant aligns with the breadth of information produced to Blackbird.

For the second dispute, Blackbird argues the covenant ends "one year after the entry of final judgment."  This is too vague because final judgment may be entered, but then the case may

be appealed and remanded. Instead, the end of the covenant period should be tied to the end of the case. Evernote proposes "one year after the conclusion of this lawsuit, including any appeals."

For the final disputes, Evernote's Customer provision clarifies that non-paying users should also be covered, which prevents Blackbird from suing Evernote's customers for infringement instead of directly suing Evernote. Evernote's Supplier provision clarifies that components—and not just final products—should be covered, which Blackbird from suing Evernote's suppliers just because their software was combined with Evernote software. Finally, Evernote's proposal adds notice terms. This is critical because lack of notice allows Blackbird to avoid the covenant in certain circumstances. Explicit notice avoids ambiguity about compliance.

## IV.    The Appropriate Scope of a Prosecution Bar - ¶13

### A.    **Blackbird's Position**

Defendant has similarly proposed a prosecution bar that restricts prosecution of broad applications involving organizing, task management, or archiving. (Ex. A, at ¶13). For the same reasons as with its covenant not to sue, the Court should also reject Defendant's attempt to improperly expand the prosecution bar. *See id.*; *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C–09–02180, 2011 U.S. Dist. LEXIS 97403, 2011 WL 197811, at *5 (N.D. Cal. Jan 20, 2011) (finding that the proper subject matter of the proposed prosecution bar "should be coextensive with the subject matter of the patents-in-suit[.]").

### B.    **Evernote's Position**

Evernote's position on this issue is addressed above in Section III (covenant to not sue).

## V.    Post-Litigation Destruction Obligation of Work Product and Emails - ¶25

### A.    **Blackbird's Position**

The parties also dispute the terms regarding the return or destruction of designated materials after the final termination of this case. (*See* Ex. A, ¶ 25).  The parties agree that there be

no obligation for outside counsel of record to (1) return or destroy designated materials integrated into counsels' work product, and (2) to require counsel to search for and destroy emails containing designated material. (*Id.*). The dispute is whether these exceptions should be extended to all counsel of record (as Blackbird proposes), or to only outside counsel (as Defendant proposes). As explained above, Blackbird's Protective Order, including the covenant not to sue, provides sufficient protection for Defendant from future litigation. There is simply no reason to place additional burdens on Blackbird's counsel of record. The same restrictions or exceptions as to the handling of materials should apply to all counsel of record in this case.

### B.  Evernote's Position

Blackbird's owners want to litigate this matter, gain unlimited access to Evernote's RCSC, and then keep copies *forever*. This is an extremely unusual situation, and its exposes Evernote to significant risk. As noted above, Blackbird's owners are counsel-of-record and competitive decisionmakers. Their business is acquiring and enforcing patents, potentially against Evernote in the future. If Blackbird can view, analyze, and keep Evernote's sensitive information *forever*, the risks of misuse and inadvertent use skyrocket. Blackbird does not need to keep Evernote's sensitive information forever. Public and less sensitive information should be enough for its records. Blackbird wants all the benefits of being outside counsel, but refuses to acknowledge the responsibility of being outside counsel: an independent legal attorney with separate business interests than its client. Blackbird cannot demand the benefits of both roles without accepting the responsibility of those roles. As such, Blackbird must destroy Evernote's "DESIGNATED MATERIALS" when this case is over.

Dated:  June 23, 2021

OF COUNSEL

Wendy Verlander
wverlander@blackbird-tech.com
Jeffrey Ahdoot
jahdoot@blackbird-tech.com
Matthew C. Berntsen
mberntsen@blackbird-tech.com
Blackbird Tech LLC d/b/a
Blackbird Technologies
200 Baker Avenue, Suite 303
Concord, MA 01742
 (617) 307-7100

BUETHER JOE & COUNSELORS, LLC

*/s/ Christopher M. Joe*
Christopher M. Joe
Chris.Joe@BJCIPLaw.com
BUETHER JOE & COUNSELORS, LLC
1700 Pacific - Suite 4750
Dallas, TX 75201
(214) 466-1272


*Attorneys for Plaintiff*
*Blackbird Tech LLC*
*d/b/a Blackbird Technologies*

*/s/ Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello
State Bar No. 24066913
elizabeth.chiaviello@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street
Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000
Facsimile: (214) 466-4001

Scott D. Sherwin
Illinois Bar No. 6293788
scott.sherwin@morganlewis.com
Candace Polster
Illinois Bar No. 6333791
candace.polster@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

*Attorneys for Defendant Evernote*
*Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served upon counsel of record on June 23, 2021

via ECF.

*/s/ Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello