**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, <br><br> *Plaintiff*, <br><br> v. <br><br> EVERNOTE CORPORATION <br><br> *Defendant*. | C.A. No.: 6:20-cv-00603-ADA <br><br> JURY TRIAL DEMANDED |

**DEFENDANT EVERNOTE CORPORATION'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Innovative Prop. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2004)...................................................................................5

*Astrazeneca AB v. Mutual Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004)...................................................................................5

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.*,
    2016 WL 7364266 (E.D. Tex. Dec. 19, 2016)...........................................................6

*Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*,
    2015 WL 6870031 (D. Del. 2015))..............................................................................6

*dunnhumby USA, LLC v. emnos USA Corp.*,
    2015 WL 1542365 (N.D. Ill. Apr. 1, 2015) ..............................................................16

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
    815 F.3d 1314 (Fed. Cir. 2018)...................................................................................2

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012).....................................................................................5

*IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*,
    2019 WL 3936656 (D. Del. 2019) ..............................................................................5

*Inter Digital Commc'ns, LLC v. Int'l Trade Comm'n*,
    690 F.3d 1318 (Fed. Cir. 2018)...........................................................................8, 11

*IQASR LLC v. Wendt Corp.*,
    825 825 F. App'x 900 (Fed. Cir. 2020) ......................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)................................................................................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................2, 8, 11

*Personalized Media Communications, LLC v. Google LLC, et. al*,
    No. 19-CV-00090-JRG (E.D. Tex. Apr. 3, 2020)...................................................15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 1996)..............................................................................5

*Smith v. ORBCOMM, Inc.*,
    2015 WL 5302815 (E.D. Tex. Sept. 10, 2015) ......................................................6

*Sunovian Pharm., Inc. v. Teva Pharm. USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013)..............................................................................5

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016)............................................................................17

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)...........................................................................8, 11

*Virtual Sols., LLC v. Microsoft Corp.*,
    925 F. Supp. 2d 550 (S.D.N.Y.), aff'd, 540 F. App'x 997 (Fed. Cir. 2013) ..........................18

I.     **INTRODUCTION**

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird") asserts U.S. Patent No. 9,183,220 ("the '220 patent" or "the Asserted Patent") against Defendant Evernote Corporation ("Evernote").  Blackbird only asserts method claim 13.  The '220 patent, entitled "Hierarchical Structured Data Organization System," describes organizing electronic files in more than one file system on a recordable medium.  *See* Ex. 1 ('220 patent).  The specific focus of the '220 patent is directed to "improving the searching and/or organizing electronic data in a data processing system or web site."  Ex. 1 at 1:23–25.  Blackbird asserts an earliest effective filing date of May 26, 2009.  *See, e.g.*, 2020-09-17 Preliminary infringement contentions ("Plaintiff hereby states that the earliest effective filing date under 35 U.S.C. § 120 for claim 13 of the Asserted Patent is May 26, 2009.").

The parties agree the preamble of claim 13 is limiting and agree to the construction of two terms:  "user" and "additional hierarchical file structure."

The parties dispute the meanings of four terms.  With respect to the disputed terms "first file structure" and "metalabel," the specification includes explicit meanings in its "DEFINITIONS" section.  Evernote adopts these definitions, while Blackbird ignores them.  Blackbird's proposed claim constructions should be rejected because they improperly broaden the scope of these terms beyond the definitions and descriptions in the specification and other intrinsic evidence.

The remaining two disputed terms are both indefinite.  The phrase "wherein more than one of the at least two plurality of electronic files, data items, web pages, or website members is assigned a same user-defined metalabel to organize the more than one of the plurality of electronic files, data items, or web pages in a same one of the additional hierarchical file structures" is

indefinite because it is not clear if this term refers to applying metalabels to two files or to two groups of files, and because it is not clear if it refers to applying metalabels to more than one file or to more than one group of files.

Additionally, the phrase "the processor automatically linking each of the plurality of user-defined metalabels stored in the database to a corresponding electronic file, data item, web pages, or web site members of the each of the plurality of user-defined metalabels" is indefinite because the term "the database" lacks any antecedent basis and it is not clear if the "the database" refers to a previously-recited structure or storage medium from claim 13, or which structure or medium that might be.

Blackbird argues that these terms are not indefinite and proposes those terms should be construed with their "plain and ordinary meaning." However, the Federal Circuit has repeatedly criticized this type of tactical approach. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2018) (stating that "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.") (quoting *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)). Furthermore, Blackbird's proposed constructions attempt to rewrite the claims, yet still fail to resolve the indefiniteness issues. For these reasons, Blackbird's proposed constructions for these two terms should be rejected.

## II.   <u>BACKGROUND OF TECHNOLOGY</u>

The file structure used by the operating system of a computer stores, organizes, and is used to retrieve electronic information (*i.e.*, electronic files organized in various folders of a file structure). It took time to develop the convenient file structures that we all now take for granted. In the early days of computers, information was stored electronically using magnetic tapes.

Reading and writing information to and from magnetic tapes was sequential and the cost of access grew in direct proportion to the size of the file(s).  As files grew very large, unaided sequential access was not a good solution because it was slow.

In the 1950's, the advent of electro-mechanical data storage devices that were able to store and retrieve digital data using magnetic storage (*i.e.*, hard drives) allowed for direct access to a specific file.  Combined with an index (or lookup table), it was possible to keep a list of keys and pointers in a small file that could be searched very quickly to find unique data or files in a much larger file or group of files.  However, many indexes are also sequential such that if they become too large, they can also become difficult to manage and may be slow to search.

To avoid this problem, in the early 1960's, data was organized using tree structures to manage the index and files.  However, trees can also grow unevenly as data is added and/or deleted. These complex trees can also make it difficult and time consuming to find a specific file.

Over time, and since well before the earliest effective filing date of the Asserted Patent, numerous other data structures have become commonly used, including hash tables, arrays, and graphs as way to store, organize, and search for information and electronic files.  *See* https://en.wikipedia.org/wiki/List_of_data_structures.  Each solution has its own benefits depending on the type, size, and usage of the data and files that are being stored, organized, and searched.

A very common example of a file structure used before the earliest effective date of the Asserted Patent is the Windows directory.  This file structure enables applications to store and retrieve files on storage devices.  Files are placed in a hierarchical structure in folders.  The file system has a name for each folder and file, and there is a file path to each file in the file structure (*e.g.*, C:/documents/photos/vacation/family.jpg).  Another common way to organize information

is by applying keywords or tags to files.  Although people used keywords to classify information and objects long before computers (*e.g.*, the Dewey decimal system), the advent of search algorithms using keywords as a way to quickly search for files made them popular on computers and the Internet as well.  For example, tagging as a way to organize information gained popularity in the early 2000's due to the growth of social bookmarking, image sharing, social networking, and email websites (*e.g.*, https://del.icio.us; https://www.flickr.com; and https://gmail.com/).

On February 29, 2000, EverNote was founded and launched its Windows desktop notetaking and web clipping application by allowing users to create notes.  This software could organize the same note in multiple different ways: using keywords manually assigned by a user, automatic categorization techniques, using saved searches, etc.  By February 21, 2008, EverNote re-branded as Evernote and launched new desktop software and an Internet-based service.  This version of Evernote allowed a user to organize notes in a notebook and with a tag (their name for a metalabel).  All of this data was stored in Evernote's MySQL servers and the organization of that database has not changed since 2008.  In short, since Evernote's founding it has allowed users to store the same data (*i.e.*, notes) in at least two different data structures at the same time.

More than one year after Evernote's rebranding, on May 26, 2009, the application that matured into the '220 patent was filed.  Asserted claim 13 of the '220 patent is generally directed to storing data in a "first file structure" and organizing that same data in "additional hierarchical file structures existing simultaneously with the first file structure."  In short, claim 13 is directed to the concept of storing data in at least two different structures at the same time.  Claim 13 is below and the terms relevant to this *Markman* hearing are bolded and italicized:

> 13. A computer-implemented method of organizing a plurality of electronic files, data items, web pages, or web site members organized in a ***first file structure*** on a recordable medium, the method comprising:

4

assigning with a data processor a plurality of *metalabels* defined by a *user* to each of at least two of a plurality of electronic files, data items, web pages, or web site members to organize the electronic files, data items, web pages, or web site members as a function of the metalabels into a plurality of *additional hierarchical file structures* existing simultaneously with the first file structure, *wherein more than one of the at least two plurality of electronic files, data items, web pages, or web site members is assigned a same user-defined metalabel to organize the more than one of the plurality of electronic files, data items, or web pages in a same one of the additional hierarchical file structures*;

storing the plurality of additional hierarchical file structures on the recordable medium or a second recordable medium associated with the data processor;

*the processor automatically linking each of the plurality of user-defined metalabels stored in the database to a corresponding electronic file, data item, web pages, or web site members of the each of the plurality of user-defined metalabels*; and

automatically updating the additional hierarchical file structures with the processor when any of the plurality of electronic files, data items, web pages, or web site members is moved, modified, copied, or deleted.

## III.  LEGAL STANDARDS

### A.  Claim Construction

"When construing claim terms," a court must "first look to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Sunovian Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 1996)).  Courts consider these various sources "[b]ecause the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically." *Phillips*, 415 F.3d at 1314.  Additionally, when a patentee manifests an express intent to define a term, that express definition controls.  *See 3M Innovative Prop. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004) (holding the patentee acted as its own lexicographer when the specification stated: "'Multiple embossed' means…"); *see also Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1338 (Fed. Cir. 2004).

### B.      Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc.*

*v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).   "[A] patent is invalid for

indefiniteness if its claims, read in light of the specification delineating the patent, and the

prosecution history, fail to inform with reasonable certainty, those skilled in the art about the scope

of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).   When

the record fails to put a person of ordinary skill on notice of what an ambiguous claim term is, and

to inform with reasonable certainty whether one is using the claimed element, the claim term is

indefinite.  *IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*, 2019 WL 3936656, at *7

(D. Del. 2019), *aff'd*, 966 F.3d 1374 (Fed. Cir. 2020).   Where "there are multiple plausible

interpretations…the term fails to inform an ordinary-skilled artisan of the 'scope of the invention'

with 'reasonable certainty.'" *Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*, 2015 WL 6870031,

at *9 (D. Del. 2015) (citation omitted).   "Even if a claim term's definition can be reduced to words,

the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into

meaningfully precise claim scope." *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 907 (Fed. Cir.

2020) (quotation omitted).

### C.      Lack of Antecedent Basis

The uncertainty as to the scope of a claim is exacerbated when a claim limitation lacks

antecedent basis.   As such, a claim is indefinite if a claim term lacks an antecedent basis both

implicitly and explicitly.  *See Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, No. 2:15-cv-576-

RWS-RSP, 2016 WL 7364266, at *8 (E.D. Tex. Dec. 19, 2016) (finding the term "the apparatus"

indefinite because the claims did not specify whether "the apparatus" was an apparatus that was

performing the recited method); *Smith v. ORBCOMM, Inc.*, No. 2:14-cv-666, 2015 WL 5302815,

at *12 (E.D. Tex. Sept. 10, 2015) (finding the term "said inputs to be controlled" indefinite because

6

it lacked an antecedent basis due to a drafting error and further declining to correct the error because the meaning of this term was not evident from the face of the specification or the claims).

## IV.    PROPOSED CLAIM CONSTRUCTIONS

### A.    Agreed Claim Terms

In accordance with the Court's Order Governing Proceedings for Patent Cases, the parties held a meet and confer regarding the number of disputed claim terms for construction.  The following terms have been agreed to by both Evernote and Blackbird.

| Claim 13 Phrase or Term | Agreed Construction |
|---|---|
| Preamble: "A computer-implemented method of organizing a plurality of electronic files, data items, web pages, or web site members organized in a first file structure on a recordable medium, the method comprising" | Preamble is limiting |
| "user" | any person, process, or autonomous software agent, as known in the art, acting on behalf of a person having access to the electronic files |
| "additional hierarchical file structure" | separate hierarchical file structures that exist in addition to the first file structure |

### B.    Disputed Claim Terms

The parties dispute the construction of four terms, including whether two terms are indefinite.

#### 1.    "first file structure" (Claim 13)

| Evernote's Proposed Construction | Blackbird's Proposed Construction |
|---|---|
| the already existing directory tree structure commonly used in organizing electronic files in data processing systems where individual files are given a filename and a file's placement in the tree structure is identified by a file path. | the existing directory structure used to organize a plurality of electronic files, data items, web pages, or web site members in a data processing system |

Claim 13 recites a "computer-implemented method of organizing a plurality of electronic

files, data items, web pages, or web site members organized in a ***first file structure*** on a recordable medium." Ex. 1 at 18:39-43.  The parties agree that a "first file structure" does not have a plain and ordinary meaning.  Evernote explains that this term was defined and described in the specification and its meaning should not deviate from that definition and description in the specification.  Blackbird argues this term should be broadened to include any type of existing directory structure.  However, Blackbird's proposed construction is contrary to the intrinsic evidence.  In light of the parties' dispute about the scope and meaning of this term, the Court should construe this term.  *O2 Micro*, 521 F.3d at 1360.

Evernote's construction of a "first file structure" is consistent with the "DEFINITIONS" section of the '220 patent.  Ex. 1 at 4:43.  "The plain meaning of claim language ordinarily controls unless the patentee acts as his own lexicographer and provides a special definition for a particular claim term or the patentee disavows the ordinary scope of a claim term either in the specification or during prosecution."  *Inter Digital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012).  The specification functions as a dictionary "when it expressly defines terms used in the claims or when it defines terms by implication."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Notwithstanding any lexicographic definitions, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.*

Here, the term "first file structure" is only used in the claims and is not used in the written description.  However, the '220 patent frequently uses the related terms "first hierarchical file structure" and a "traditional hierarchical file structure" in the written description.  Those terms are not used in the claims.  However, they are explicitly defined in the specification and are:

> "to be understood to refer to the already existing directory tree structure commonly used in organizing electronic files in data processing systems.

> The first or traditional hierarchical file structure generally includes a plurality of directories and subdirectories, and individual files are given a filename and a file's placement in the tree structure is identified by a file path."

Ex. 1 at 4:60-67. The claim term "first file structure" should have this same meaning because this is the only relevant description of this claim term in the specification. While the patentee may not have acted as its own lexicographer because of the slightly different word choice between the claim term and the specification, no other disclosure refers to a first file structure. Thus, this meaning and description from the specification must be applied to this term otherwise this term would lack any written description.

Furthermore, construing the "first file structure" consistent with this definition from the specification aligns with the Patent Office's understanding during prosecution that these file structure terms had the same meaning. *See, e.g.*, Ex. 2 Notice of Allowability dated June 26, 2015 (equating "first file structure" with "traditional folder system"). This confirms that the definition and description of a file structure in the specification should also apply to the "first file structure" term.

Contrary to the intrinsic evidence, Blackbird seeks to alter the meaning of this term with a litigation-inspired definition. Blackbird's proposed construction changes the meaning of the term by eliminating requirements. Blackbird changes the phase "existing directory tree structure commonly used" recited in the "Definitions" section by eliminating the "tree" and "commonly" used requirements from this term. This improperly expands this term to cover any directory structure, even if it is not a tree structure and even if it was not commonly used at the time the patent was filed.

Additionally, Blackbird drops the requirement that the "first file structure" hold "files." Instead, Blackbird's construction is so broad that the "first file structure" can hold other types of

9

information like "data items, web pages, or web site members."  While that type of information can be held in a file system if that information is stored in a file, it is improper to expand the scope of this term to include other types of storage (*e.g.*, block or object storage like in RAM memory and/or databases).

Finally, Blackbird omits the requirement that "individual files are given a filename and a file's placement in the tree structure is identified by a file path."  Instead, Blackbird's construction is so broad that the data can be held in any form or format in a data-processing system.  This is contrary to the description of this term in the specification and purpose of the invention.  *See* Ex. 1 at Fig. 1 and 4:39-43 ("As discussed above, current searching of the electronic files in the traditional hierarchical file structure, as represented in FIG. 1, is typically based upon the filename or other information about the file itself, such as the file type or extension.").  For at least these reasons, Blackbird's proposed construction should be rejected.

For all of these reasons, the Court should find the term "first file structure" means "the already existing directory tree structure commonly used in organizing electronic files in data processing systems where individual files are given a filename and a file's placement in the tree structure is identified by a file path" as defined and described in the specification.

### 2.      "metalabel" (Claim 13)

| Evernote's Proposed Construction | Blackbird's Proposed Construction |
|---|---|
| an identifier given to an electronic file, web page, or web site member in addition to the file's filename and/or file path, a web page's domain address, or the web site member's member identification name | identifiers comprised of words and/or numbers created by a user to describe or annotate electronic files, data items, web pages, or website members |

Claim 13 recites a method claim comprising the step of "assigning with a data processor a plurality of ***metalabels*** defined by a user to each of at least two of a plurality of electronic files, data items, web pages, or web site members to organize the electronic files, data items, web pages,

or web site members as a function of the ***metalabels*** into a plurality of additional hierarchical file structures existing simultaneously with the first file structure." Ex. 1 at 18:43-49. The parties agree that "metalabels" do not have a plain and ordinary meaning. Evernote explains that this term was explicitly defined in the specification and its meaning should not deviate from the definition chosen by the applicants. Blackbird argues the Court should ignore this explicit definition and instead this term should be broadened to include any type of alphanumeric label. However, Blackbird's proposed construction is contrary to the intrinsic evidence. In light of the parties' dispute about the scope and meaning of this term, the Court should construe this term. *O2 Micro*, 521 F.3d at 1360.

The term "metalabel" is explicitly defined in the "DEFINITIONS" section of the specification. Ex. 1 at 4:43. This express definition controls the meaning of this term. "The plain meaning of claim language ordinarily controls unless the patentee acts as his own lexicographer and provides a special definition for a particular claim term or the patentee disavows the ordinary scope of a claim term either in the specification or during prosecution." *Inter Digital Commc'ns*, 690 F.3d at 1324. The specification functions as a dictionary "when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics*, 90 F.3d at1582.

The specification defines this term:

> "References herein to 'metalabel' are to be understood to refer to an identifier given to an electronic file, web page, or web site member in addition to the file's filename and/or file path, a web page's domain address, or the web site member's member identification name."

Ex. 1 at 4:48-55. The Court should adopt this explicit definition for this term.

In an attempt to avoid this definition, Blackbird seeks to change the meaning of the term. Blackbird's proposed construction eliminates the requirement to have an "identifier . . . in addition to the file's filename and/or file path, a web page's domain address, or the web site member's

member identification name."  Removing the requirement to have information about the file (*e.g.*, the file's filename and/or file path) is contrary to the usage of this term in the specification. This is also not included in the definition of this term and there is no reason to add it to the patent's explicit definition of this term.  For at least these reasons, Blackbird's construction must be rejected.

The Court should find the term "metalabel" means "an identifier given to an electronic file, web page, or web site member in addition to the file's filename and/or file path, a web page's domain address, or the web site member's member identification name" as defined in the specification.

> **3.**    **"wherein more than one of the at least two plurality of electronic files, data items, web pages, or website members is assigned a same user-defined metalabel to organize the more than one of the plurality of electronic files, data items, or web pages in a same one of the additional hierarchical file structures" (Claim 13)**

| Evernote's Proposed Construction | Blackbird's Proposed Construction |
|---|---|
| Indefinite. | Not indefinite. |
| Alternatively:  "wherein more than one group of electronic files, data items, web pages, or web site members is assigned a same user-defined metalabel to organize the same groups of electronic files, data items, or web pages in a same one of the additional hierarchical file structures" | Accordingly, the plain and ordinary meaning applies, which is "wherein a plurality of electronic files, data items, web pages, or website members are assigned the same metalabel to organize them in the same additional hierarchical file structure" |

This limitation renders claim 13 indefinite.  In particular, "the at least two plurality of electronic files. . ." and "the more than one of the plurality of electronic files. . ."  phrases lack antecedent basis and their meaning is uncertain.

The phrase "the at least two plurality of electronic files. . ." has no antecedent basis because there is no earlier introduction of "at least two plurality of electronic files" in claim 13, nor anywhere else in claim 13 of the '220 patent. *See generally* '220 Patent.  Importantly, nothing in

the intrinsic record rescues this phrase because the intrinsic record, including the specification, lacks any description about what the "at least two plurality of electronic files. . ." is referring to. The specification states that "a user-defined metalabel" is assigned to "each of a plurality of electronic files." Ex. 1 at 2:65–2. The "plurality" means at least two electronic files. However, the specification does not disclose whether the metalabel assignment to "at least two plurality of" (as disclosed in claim 13) refers to an assignment to *two or more* "electronic files" or to *two pluralities* of "electronic files." This lack of clarify about how many metalabels must be applied—and whether to individual files or to groups of files—renders this claim indefinite.

Similarly, the term "more than one of the plurality of electronic files" also renders claim 13 indefinite because a person having ordinary skill in the art would not be able to ascertain with reasonable certainty whether claim 13 refers to just "more than one. . . electronic files" on an *individual basis* or whether this term refers to "more than one *pluralities of* "electronic files." The specification's description of the term "more than one of the plurality of electronic files" does not provide any clarity as to whether claim 13 is referring to the "electronic files" on an individual basis or to a plurality of electronic files (*i.e.*, a group or files). *See* Ex. 1 at 3:2–6, 3:58–64.

As a result of the lack of clarity in both of these phrases in this term, the Court should find this term indefinite and render this claim invalid.

Alternatively, should the Court find this claim term does not render claim 13 indefinite, this claim limitation should be construed to remove these ambiguities. Specifically, this term should be construed as follows: "wherein more than one group of electronic files, data items, web pages, or web site members is assigned a same user-defined metalabel to organize the same groups of electronic files, data items, or web pages in a same one of the additional hierarchical file structures."

13

Blackbird's proposal is improper because it removes claim limitations, which improperly broaden the scope of this term.  For example, Blackbird's proposal does not interpret any portion of the disputed phrase and instead merely omits the phrase "more than one of the at least two," "user-defined," and the second appearance of "more than one."  By deleting "more than one of at least two", Blackbird effectively reduces the number of file groupings required by claim 13, which constitutes an impermissible broadening of claim scope.

For all of these reasons, the Court should find this claim indefinite because it is not clear if this term refers to applying metalabels to two or more files or to two or more groups of files, and because it is not clear if it refers to applying metalabels to more than one file or to more than one plurality of files.

      4.    **"the processor automatically linking each of the plurality of user-defined metalabels stored in the database to a corresponding electronic file, data item, web pages, or web site members of the each of the plurality of user-defined metalabels" (Claim 13)**

| Evernote's Proposed Construction | Blackbird's Proposed Construction |
|---|---|
| Indefinite.<br><br>Alternatively: "the database" means: "a database." | Not indefinite.<br><br>Accordingly, the plain and ordinary meaning applies, which is "the processor automatically linking each user-defined metalabel assigned to a corresponding electronic file, data item, web page, or web site member to that electronic file, data item, web page, or web site member, the metalabels being stored on a recordable medium. |

This limitation renders claim 13 indefinite.  The claim recites "the database" using the definite article "the" without previously introducing "a" database.  Thus, "the database" lacks antecedent basis.  While this alone could render this term indefinite, the uncertainty in scope does not stop there.  Claim 13 includes a "first file structure" and "additional hierarchical file structures."  However, the claim never states whether "the database" refers to either of those

14

structures, or whether "the database" is a third structure.  Additionally, claim 13 recites where the first file structure is located:  on "a recordable medium."  It also recites where the additional hierarchical file structures are located:  on "the recordable medium or a second recordable medium."  However, the claim never states whether "the database" is on one of those two recordable mediums, or whether it is distinct from those recordable mediums.  As such, claim 13 fails to disclose what "the database" is or how "the database" might relate to the other claimed structures and recordable mediums in claim 13.  *See, e.g.*, *Personalized Media Communications, LLC v. Google LLC, et. al,* No. 19-CV-00090-JRG (E.D. Tex. Apr. 3, 2020) (find a claim indefinite because "[t]here is no antecedent reference to 'storage locations' or 'identified storage locations' supporting 'said identified storage locations'").

The issues of what "the database" is and where it is causes additional problems for claim 13's scope because it is not possible to know when infringement of this term occurs.  Claim 13 requires "automatically linking each of the plurality of user-defined metalabels stored in the database to a corresponding electronic file. . ."  In short, a user-defined metalabel from the database must be linked to a file.  Because there is no clarity as to how "the database" relates to the other structures and mediums of claim 13, the claim does not disclose whether the metalabels must be stored in the first file structure, one of the additional hierarchal file structures, the recordable medium, the second recordable medium, or some other distinct structure.  As such, is not possible for the accused infringer to know whether a certain user-defined metalabel linked to a file in the accused product even meets this limitation or not.  This lack of reasonable certainly also renders this claim indefinite.[1]

---

[1] Putting aside the issue of what "the database" is or where it is (which renders claim 13 indefinite, as was explained above), Blackbird's construction seeks to gloss over further

The intrinsic evidence further exacerbates the uncertain scope of "the database" term.  In particular, claims 12 and 14 recite "a database."  The database of claim 12 is included in "a taxonomy handler" and the database of claim 14 is "a memory component database" that is part of "a label server."  This is consistent with the specification, which describes these types of databases. *See, e.g.*, Ex. 1t at 12:62-65 (mentioning, with reference to Figure 7, the taxonomy handler and its database) and 14:60-64 (mentioning, with reference to Figure 10, the label server and its database).  The disclosure of these other databases associated with either a taxonomy handler or a label server underscores the lack of clarity in claim 13.  It is unknown if "the database" in claim 13 refers to a part of a label server or a taxonomy handler, as described in the specification for certain databases, whether it is a part of the file structures or recordable mediums recited in claim 13, or whether it is something else entirely.  The patentee could have clarified the scope of "the database" in claim 13, as it did in independent claims 12 and 14 by limiting it to part of a label server or taxonomy handler, but it failed to do so in claim 13.  As a result, this term is subject to multiple different interpretations and that renders it indefinite.  *See, e.g.*, *dunnhumby USA, LLC v. emnos USA Corp.*, No. 13-CV-0399, 2015 WL 1542365, at *16 (N.D. Ill. Apr. 1, 2015) (finding the claim term "query type" indefinite as lacking reasonable certainty under *Nautilus* standard because this term relates to "many functions and options").

In an attempt to rewrite the claims to avoid these indefiniteness issues, Blackbird argues the Court should delete "the database" entirely.  *Compare* claim 13 ("the processor automatically

---

unertainty in claim 13 by removing the nonsensical recitation that "a corresponding electronic file, data item, web pages, or web site members" is "of the each of the plurality of user-defined metalabels."  It makes no sense to say that a file is "of" all of the user-defined metalabels, let alone to circularly state that such a file might also be somehow automatically linked to any one of those user-defined metalabels.  Blackbird's attempt to remove this language is a paper-thin attempt to gloss over this additional indefiniteness issue.

linking each of the plurality of user-defined metalabels ***stored in the database*** to a corresponding electronic file…") *to* Blackbird's proposal ("the processor automatically linking each user-defined metalabel ***assigned*** to a corresponding electronic file").   However, it is not proper to rewrite a claim term to avoid indefiniteness.  *See, e.g.*, *Virtual Sols., LLC v. Microsoft Corp.*, 925 F. Supp. 2d 550, 573–74 (S.D.N.Y.), aff'd, 540 F. App'x 997 (Fed. Cir. 2013) (providing that "courts may not 'rewrite claims to preserve their validity[,]' an insolubly ambiguous claim is invalid, regardless of whether one skilled in the art would understand it to mean something other than its literal terms"); *see also IBSA*, 2019 WL 3936656, at *7 (post-*Nautilus* finding of indefiniteness).

Furthermore, Blackbird's proposed construction highlights the indefiniteness issues with this term.  Recognizing that the metalabels must be stored somewhere, Blackbird injects a new claim limitation into its proposed construction.  Specifically, Blackbird's proposed construction requires "metalabels being stored on ***a recordable medium***."   However, even this attempt to rewrite the claims fails to resolve the indefiniteness issues.  It is not clear if this new recordable medium refers to the previously-recited recordable medium or the previously-recited second recordable medium, or if it refers to a new third recordable medium.  Put simply, Blackbird cannot delete "the database" limitation and replace it with "a recordable medium" to remove the ambiguitiy inherent in this term, and even this attempt to avoid indefiniteness fails because it is not clear which recordable medium Blackbird is referring to with its new "a recordable medium" term.

For all of these reasons, claim 13 is indefinite because "the database" lacks antecedent basis and it is not clear if it refers to the first file structure, one or all of the additional hierarchal file structures, the recordable medium, the second recordable medium, a part of the label server, a part of taxonomy handler, or some other structure entirely.

## V.    <u>**CONCLUSION**</u>

Evernote respectfully requests the Court to adopt its proposed constructions for the "first file structure" and "metalabel" terms, and find the remaining terms indefinite.

Dated:  August 11, 2021

/s/ Scott D. Sherwin
Elizabeth M. Chiaviello
State Bar No. 24066913
elizabeth.chiaviello@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street
Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000
Facsimile: (214) 466-4001

Scott D. Sherwin
Illinois Bar No. 6293788
scott.sherwin@morganlewis.com
Candace Polster
Illinois Bar No. 6333791
candace.polster@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 11, 2021, a true and correct copy of the foregoing brief was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

/s/ Scott D. Sherwin
Scott D. Sherwin

19